UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SABRINA WYNN, | ) CASE NO. 5:21-cv-01292 |
| | ) |
| | ) JUDGE DAVID A. RUIZ |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHADRON STARNES, *et al.*, | ) **MEMORANDUM OPINION & ORDER** |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Sabrina Wynn, represented by counsel, filed a complaint alleging several causes of action stemming from the search of her residence by law enforcement. (R. 1). After a number of Defendants were dismissed, Plaintiff filed a First Amended Complaint against FBI Agent Shadron Starnes ("Agent Starnes" or "Defendant") and a number of unidentified federal law enforcement officers. (R. 32). Plaintiff's sole cause of action is a "*Bivens* Claim for Compensatory Damage – Fourth Amendment Violations." (R. 32, PageID# 304-306).

Defendant filed an Answer as well as a Motion to Dismiss for failure to state a claim. (R. 34). Plaintiff filed a brief in opposition (R. 38) to which Defendant filed a reply. (R. 40). The matter is ripe for review.

**I. Factual Allegations**

On or about the morning of March 11, 2020, Plaintiff was at home with her minor child and an overnight guest, Lamark Robinson. (R. 32, PageID# 297, 300). After hearing knocking on the door, the announcement of the presence of law enforcement, and an order to open the door, Agent Starnes and other state and federal law enforcement officers breached the door and entered

the home. (R. 32, PageID# 297, 301). Plaintiff and her child were removed from the home while a search was conducted. *Id*. Plaintiff claims to have asked to see a search warrant, but asserts no such documentation was provided at the time of entry. (R. 32, PageID# 297-298, 301). Plaintiff concedes an arrest warrant had been issued for Lamark Robinson. (R. 32, PageID# 300).

The remaining occupant, Lamark Robinson, was seized and arrested. (R. 32, PageID# 298, 302). Thereafter, Plaintiff was permitted to reenter the home while the search continued. *Id*. Plaintiff further concedes a search warrant was provided to her at the completion of the search. (R. 32, PageID# 302). Plaintiff believes the search warrant was not obtained until after the search was completed. *Id*. A search warrant attached to the Answer to the original complaint indicates that a search warrant for the residence was signed by a judge of the Summit County Court of Common Pleas on March 11, 2020 at 1:29 p.m. (R. 15-1, PageID# 178, Exh. A). A second warrant for a search of the residence was signed on March 11, 2020 at 3:42 p.m. *Id*. at PageID# 180.

Plaintiff alleges that no contraband was found in her residence, but that Defendants removed United States currency and jewelry that were not in plain view. (R. 32, PageID# 298).

Defendant has provided a form showing that, on April 22, 2020, Plaintiff was sent a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" giving her notice that the government intended to administratively forfeit the property seized during the search. (R. 34-2. PageID# 335-338, Exh. A). The property included two firearms, $782,314.00 of U.S. currency, and jewelry valued at $259,450. *Id*. The Notice instructed that Plaintiff had until May 27, 2020, to claim the property or be subject to forfeiture. (R. 34-2, PageID# 336). Defendant states that Plaintiff chose not to avail herself of the opportunity to seek return of the property. (R. 34-1, PageID# 313).

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## III. Analysis

**A. Is Plaintiff's Claim Recognized Under *Bivens* and Its Progeny?**

In Defendant's Motion to Dismiss, it is argued that Plaintiff's sole claim is based on the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of*

*Narcotics*, 403 U.S. 388 (1971). (R. 34-1, PageID# 312). Defendant contends that the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022) effectively precludes Plaintiff's claims. *Id*.[1]  Plaintiff asserts that her Fourth Amendment claim "falls right within the ambit of *Bivens*, both in terms of the violation alleged and against whom the violation is alleged, which distinguishes it from many of cases whereby the Court has refused to extend the *Bivens* [r]emedy." (R. 38, PageID# 357).

   **1.  Method of Inquiry for Addressing *Bivens* Claims**

In order to aid a district court's analysis of proposed *Bivens* actions, the Supreme Court has framed the process as entailing two steps:

> First, we ask whether the case presents "a new *Bivens* context"—*i.e.*, is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1859-1860. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858 (internal quotation marks omitted). If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy. *Hernández*, 589 U. S., at ——, 140 S.Ct., at 743.

> While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. For example, we have explained that a new context arises when there are "potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1860. And we have identified several examples of new contexts—*e.g.*, a case that involves a "new category of defendants," *Malesko*, 534 U.S. at 68, 122 S.Ct. 515; *see also Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1876—largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action.

\*\*\*

---

[1] In *Bivens*, the United States Supreme Court authorized a damages action against federal officials for alleged violations of the Fourth Amendment. *Egbert*, 142 S. Ct. at 1799.

> Finally, our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858; *see also Schweiker*, 487 U.S. at 425, 108 S.Ct. 2460. If there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858.

*Egbert*, 142 S.Ct. at 1803-1804.

**2. Analysis**

    i.    **New *Bivens* Context**

The first question for this court is whether this case presents a new *Bivens* context such that it is meaningfully different from the three cases in which the Supreme Court has recognized an implied action. According to the United States Supreme Court's decision in *Ziglar v. Abassi*, "[t]he proper test for determining whether a case presents a new Bivens context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." 582 U.S. 120, 139 (2017). The *Ziglar* court declined to create an "exhaustive list of differences that are meaningful enough to make a given context a new one," but offered the following examples that would create a new *Bivens* context: (1) the rank of the officers involved; (2) the constitutional right at issue; (3) the generality or specificity of the official action; (4) the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; (5) the statutory or other legal mandate under which the officer was operating; (6) the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or (7) the presence of potential special factors that previous *Bivens* cases did not consider. *Id*.

The three scenarios under which the Supreme Court has previously recognized an implied cause of action are the following: (1) a former congressional staffer's Fifth Amendment sex-

5

discrimination claim, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264 (1979); (2) a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468 (1980); and (3) a cause of action under the Fourth Amendment against federal agents who allegedly handcuffed a plaintiff and threatened his family while arresting him for narcotics violations, *see Bivens*, 403 U.S. at 397. *Egbert*, 142 S.Ct. at 1802.

Plaintiff asserts that her *Bivens* claim against Agent Starnes does not present a "new *Bivens* context." (R. 38, PageID# 358-364). Despite Plaintiff's claims to the contrary, her claim of an unlawful search of her property and seizure of property does not resemble any of the trilogy of cases, not even *Bivens*. To be sure, *Bivens* involved an alleged violation of the Fourth Amendment, as does Plaintiff's claim herein. The fact that the alleged constitutional violation is the same, standing alone, is insufficient to demonstrate that Plaintiff's claim does *not* present a new *Bivens* context. "The mere fact that [a plaintiff] brings a Fourth Amendment claim, however, does not mean that a *Bivens* remedy is available." *Dalal v. Molinelli*, Civ. A. No. 20-1434, 2021 WL 1208901, at *4 (D.N.J. Mar. 30, 2021).

Turning to the actual factual circumstances in *Bivens*, those were set forth by the Supreme Court as follows:

> This case has its origin in an arrest and search carried out on the morning of November 26, 1965. … [A]gents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

*Bivens*, 403 U.S. at 389 (noting that it was further alleged that the arrest was made without a warrant or even probable cause).

6

There are significant differences in the alleged facts underpinning Plaintiff's current claim and *Bivens*. First, Plaintiff herself was never arrested. She was never transported to the police station, nor is there any allegation that she was threatened with criminal charges. (R. 32). Second, Plaintiff concedes that an arrest warrant was issued for her overnight guest, Lamark Robinson. (R. 32, PageID# 300, ¶9). Agent Starnes was operating under a different legal mandate when he was executing an arrest warrant, as the federal agents in *Bivens* were not enforcing any warrant(s).

Further, a search warrant was also obtained for the search of Plaintiff's home. (R. 15, PageID# 15-1). The Court is aware that Plaintiff alleges the warrant was obtained only after the search had already ensued or been completed. (R, 34, PageID# 302, ¶28). However, the significance of this detail is not *when* the warrant issued, but the fact that such a warrant did exist, even if obtained during or subsequent to a search of the residence following the execution of the arrest warrant, which differentiates it from the factual context of *Bivens*.

Finally, the only seizure that occurred in the case at bar, as it relates directly to Plaintiff, is the seizure of *property* found in the search. The seizure of cash, firearms, and jewelry is a markedly different context than the arrest of the plaintiff in *Bivens*, who was transported to a federal courthouse, booked, and strip-searched.

The Supreme Court does not consider the "new context" issue narrowly, and has expressly stated that its "understanding of a 'new context' is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("We regard a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.") (citations omitted). As stated above, the differences identified by this Court between the case at bar and *Bivens* constitute meaningful differences.

Conversely, the limited similarities identified by Plaintiff—Fourth Amendment claims involving a search—are precisely the type of superficial similarities the Supreme Court has stated are insufficient. In *Egbert*, the Supreme Court explained that "almost [p]arallel circumstances' or a similar 'mechanism of injury' … [are] superficial similarities [that] are not enough to support the judicial creation of a cause of action." 142 S.Ct. at 1805. Expanding on this issue, the *Egbert* court explained that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider." *Id*. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1860). Here, the presence of warrants, the fact Plaintiff was not arrested, and the fact that the primary issue herein involves the seizure of property, are all factors that distinguish this case from the three cases that recognized a *Bivens* action. Therefore, the Court must conclude that the case at bar presents a new context.

The Sixth Circuit Court has found that "[t]here is a 'firm presumption' against implying any other new cause of action under *Bivens*." *Greene v. United States*, 2022 WL 13638916 at *4 (6th Cir. Sep. 13, 2022) (*citing Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020)). Plaintiff fails to overcome such a presumption. Nevertheless, Plaintiff's claims fail even after proceeding to the second step of the inquiry.

    ii.    **Special Factors**

As set forth above, if a claim arises in a new context, as the Court finds here, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S.Ct. at 1798 (citations omitted).

This Court has no reason to believe Congress could not fashion a more effective remedy for the type of alleged violation herein. The Supreme Court has all but stated that it should be

presumed that Congress is better equipped to provide for a damages remedy. In *Egbert*, the Court stated that Congress should be the entity to provide for a damages remedy "in most every case," indicating that [o]ur cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts 'arrogat[e] legislative power.'" *Id*. at 1803 (citing *Hernandez*, 140 S.Ct. at 741). The Court further declared "if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Id*. at 1809 (citing *Ziglar*, 137 S.Ct. at 1855).

In such circumstances, it is unsurprising that the Tenth Circuit Court of Appeals recently observed: "The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril." *Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) (heeding "the Supreme Court's warning and declin[ing] Plaintiff's invitation to curry the Supreme Court's disfavor by expanding *Bivens* to cover" an Eighth Amendment claim for excessive use of force by a corrections officer). This Court also heeds the Supreme Court's clear guidance and declines to create an implied cause of action in a new context.

Alternatively, a district court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." *Egbert*, 142 S.Ct. at 1804 (citing *Ziglar*, 137 S.Ct., at 1858). In *Egbert,* the Supreme Court held the "fact that Congress had already provided alternative remedies was special factor counseling *against* implying a *Bivens* cause of action for Fourth Amendment excessive force violation." *Egbert*, 142 S. Ct. at 1793 (emphasis added). Therein, the Supreme Court found that plaintiff's *Bivens* action against a border patrol agent was foreclosed, because Congress had provided an alternative remedy, as the Border Patrol must investigate "[a]lleged violations" and accept grievances from "[a]ny persons." 8 C.F.R. §§ 287.10(a)–(b). *Id*.

9

Defendant argues that Congress has already fashioned a remedy that applies to Plaintiff's claims, 31 U.S.C. § 3724, which would further foreclose the court's recognition of an implied cause of action. (R. 34-1, PageID# 324). Defendant's position has support, as a similar conclusion was reached by another district court within the Sixth Circuit:

> Congress created an alternative remedy scheme for property damage and theft caused by federal agents during an investigation. 31 U.S.C. § 3724(a) provides in pertinent part:
>
>> The Attorney General may settle, for not more than $50,000 in any one case, a claim for personal injury, death, *or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under chapter 171 of title 28*.
>
> (emphasis added). Plaintiff alleges that the Proposed Defendants are liable for property damage, and negligently leaving Plaintiff's home vulnerable to property theft. (ECF No. 64, PageID.406-22). The Proposed Defendants were all FBI, DEA, and IRS special agents participating in a federal criminal investigation on behalf of the Department of Justice. Thus, Plaintiff already has a remedy for damage or loss of property during a federal criminal investigation. 31 U.S.C. § 3724(a). Since Congress already provided Plaintiff a remedy, *Bivens*' special factors counsel against extending a *Bivens* cause of action to Plaintiff's property damage and property theft claims. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017) ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

*Decker v. Infante*, No. 19-11654, 2022 WL 6576963, at *3 (E.D. Mich. Aug. 11, 2022), *report and recommendation adopted*, No. 19-CV-11654, 2022 WL 4000334 (E.D. Mich. Sept. 1, 2022).

This Court agrees, and any *Bivens* action stemming from Plaintiff's claims for loss or deprivation of her private property is foreclosed.

Defendant also argues that other alternative remedial structures are available to address allegations of constitutional violations such as those made by Plaintiff. Specifically, Defendant asserts that "the FBI has procedures in place to investigate reports of employee misconduct" as

10

the Department of Justice's Inspector General ("OIG") may "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice or may, in the discretion of the Inspector General, refer such allegations to the Office of Professional Responsibility or the internal affairs office…" of the FBI. (R. 34-1, PageID# 321, citing 5 U.S.C. app. 3, § 8E(b)(2)). Defendant's position has support, as a similar conclusion was reached by recent post-*Egbert* federal district court in New York:

> In addition, by statute, the Attorney General is required to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress has also authorized the Department's Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department, including the USMS. *Id*. § 8E(b)(2). The Department's Inspector General provides a link on its website through which any person may report allegations of wrongdoing. *See* Hotline, https://oig.justice.gov/hotline (last visited 11/10/2022).
>
> *Egbert* made clear that remedial schemes of this sort "foreclose a *Bivens* action," because "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." 142 S. Ct. at 1806-07. Accordingly, this Court may not extend *Bivens* to provide an implied civil damages action for Lewis's claims against Deputy Marshals in this case.

*Lewis v Westfield*, ___F Supp 3d___; 2022 U.S. Dist. LEXIS 206341, at *11-12 (E.D.N.Y., Nov. 14, 2022).

The Court agrees that with the above decision's application of *Egbert*, which explicitly explained that "we have never held that a *Bivens* alternative must afford rights to participation or appeal" because *Bivens* "is concerned solely with deterring the unconstitutional acts of individual officers" and "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1806. This Court,

consistent with the binding precedent of *Ziglar* and *Egbert*, finds that there are alternative remedial structures in place to address claims like Plaintiff's. These alternative remedial structures constitute a "special factor" that alone is reason enough to find a judicial expansion in a new context is unwarranted under the facts and circumstances of this case.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss (R. 34) is hereby GRANTED as to all Defendants. This action is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

*s/ David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 26, 2023